# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

KENNETH RAY ADAMS, JR.                                    PLAINTIFF

V.                        No. 4:18CV00573-JM-JTR

NEELD, Corporal,
Saline County Detention Facility                          DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Kenneth Ray Adams, Jr. ("Adams") is a pretrial detainee in the Saline County Detention Facility ("SCDF"). He has filed a *pro se* § 1983 Complaint and Amended Complaint alleging that Defendant Corporal Neeld ("Neeld") violated his

constitutional rights and the Americans with Disabilities Act ("ADA"). *Docs. 2 & 5*.[1] Before Adams may proceed with this action, the Court must screen his allegations.[2]

## II. Discussion

### A. Adams's Claims

Adams alleges that, on July 6, 2018: (1) Neeld opened, outside Adams's presence, a large envelope containing "confidential and legal documentations" regarding Adams's claim for social security benefits; and (2) Adams later discovered that three documents were missing, all of which contained his social security number, home address and case claim number.[3] *Doc. 2 at 4-5*.

---

[1]The Court has construed Adams's *pro se* Complaint and Amended Complaint, together, as constituting his claims and arguments. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (*pro se* complaint must be "liberally construed" and "*pro se* litigants are held to a lesser pleading standard than other parties"); *Kiir v. N.D. Pub. Health,* 651 Fed. Appx. 567, 568 (8th Cir. 2016) (amended complaint "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint).

[2]The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

[3]He identifies two of the documents as a "Notice of Payment Figuration" and a "Notice of Approval of SSI." *Doc. 5 at 1*.

According to Adams, the envelope was mailed to him at the SCDF by his sister, and it contained documents from a caseworker at the Social Security Administration. The envelope was *not* marked as "confidential or legal mail." *Doc. 5 at 1*. He contends that the loss of his documents makes him accessible to identity theft, invasion of privacy, and fraud, and could "ruin [his] credit report." *Id. at 2*. Adams said he believes Neeld seized the documents because Adams: (1) is African American and mentally disabled; and (2) has had some "racial[] disputes" at the SCDF. *Id. at 1*.

Adams claims that the mishandling of his mail violated his constitutional rights and amounted to "discrimination" against him based on his race and disability. Adams sues Neeld in his official and individual capacity, and seeks compensatory damages and a declaratory judgment that his rights have been violated. *Doc. 2 at 2, 5-6; Doc. 5 at 2*.

### B.   Constitutional Violations

#### 1.   Official Capacity Claim

As a matter of law, Adams's "official capacity" claim must be construed as a claim against Neeld's employer, Saline County. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Jenkins v. County of Hennepin, Minnesota*, 557 F.3d 628, 631-32 (8th Cir. 2009). Saline County cannot be held vicariously liable, in a § 1983 action, for the acts of its employees. *See Monell v. Dept. of Soc. Servs.*, 436 U.S.

658, 691-94 (1978). Instead, it can only be held liable if its policies, customs, and practices caused Adams's injury. *See Jenkins*, 557 F.3d at 632; *Grayson v. Ross*, 454 F.3d 802, 810-11 (8th Cir. 2006).

Because Adams does not allege that a Saline County policy, practice, or custom caused his injury, he has failed to plead a viable official-capacity claim against Neeld. Accordingly, that claim should be dismissed.

### 2. Individual Capacity Claims

Adams alleges a one-time incident of his incoming mail being opened, with three documents being either lost or destroyed. The law is settled that "an isolated incident [of incoming legal mail being opened], without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner v. Howard,* 109 F.3d 427, 431 (8th Cir. 1997); *see also Holloway v. Pigman,* 884 F.2d 365, 367 (8th Cir. 1989) (no constitutional violation due to "random" delays and confiscation of mail from inmate's family and friends).

The Sixth Amendment right to counsel requires prison officials to open and inspect *privileged* legal mail in the inmate's presence. *Wolff v. McDonnell,* 418 U.S. 539, 576-77 (1974); *Gardner,* 109 F.3d at 430. However, *privileged* legal mail is narrowly defined as "mail to or from an inmate's attorney and identified as such." *Gardner,* 109 F.3d at 430. Thus, no Sixth Amendment violation occurred if Neeld

opened and inspected Adams's mail *from his sister* without Adams being present. *Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998) (package from a family member is "not legal mail"); *Smith v. Boyd*, 945 F.2d 1041,1043 (8th Cir. 1991) (applying the same law to pretrial detainee's mail tampering claim).

To plead a viable First Amendment access to the courts claim, a prisoner must allege that he suffered an actual injury, which is defined as "the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008); *Smith*, 945 F.2d at 1043 (pretrial detainee). Adams does not allege that the opening of this one envelope, or the missing documents, has actually interfered with any legal proceeding. The possibility of future financial harm that he alleges is speculative and insufficient under the law. Furthermore, his claim for social security benefits is not the type of claim that gives rise to a violation of his First Amendment right to access the courts. *Lewis v. Casey,* 518 U.S. 343, 354-55 (1996) (First Amendment's "injury requirement is not satisfied by just any type of frustrated claim," and instead must involve *a challenge to the prisoner's sentence or his conditions of confinement*).

The First Amendment also encompasses an inmate's right to free speech to send and receive mail. *Hudson v. Palmer,* 468 U.S. 517, 547 (1984). However, "freedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff,* 418 U.S. at 576. As explained, the opening and inspection of *non-privileged*

5

inmate mail, with no legally cognizable "injury," simply does not give rise to a § 1983 violation.

Adams also alleges that the alleged one-time opening and loss of his mail amounted to "cruel and unusual punishment" in violation of the Eighth Amendment. However, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Neeld's alleged actions fall far short of that standard.

Finally, Adams makes the conclusory allegation that he "believes" Neeld seized the documents because of "discrimination" based on Adams's race and mental disability. He has not presented any facts suggesting that he was treated differently from other detainees, or that any difference in treatment was motivated by his membership in a protected class. Although provided the opportunity to clarify this allegation, Adams has failed to allege sufficient "factual content to 'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible,'" as is required to state a § 1983 claim. *Iqbal,* 556 U.S. at 678, 683 (a "pleading that offers 'labels and conclusions'" and "naked assertions devoid of further factual enhancement" is insufficient "to state a claim to relief that is plausible on its face"; dismissing complaint that "does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind"); *Doering v. Tate,* No.

5:13cv00147-JLH-JTR, 2013 WL 3874294, at *2 (E.D. Ark. July 26, 2013) (dismissing, for failure to state a viable claim, a prisoner's "vague and conclusory" allegations that he was discriminated against due to his race).

Accordingly, the Court recommends that all of Adams's individual-capacity constitutional claims be dismissed for failure to state a claim upon which relief may be granted.

### C.   ADA Violation

Adams makes the conclusory allegation that Neeld's actions violated "Title III [and] II" of the ADA. *Doc. 5 at 2.*

Title III of the ADA is clearly inapplicable to Adams's claims regarding SCDF, a public entity. *See Klingler v. Director, Dept. of Revenue,* 433 F.3d 1078, 1080 (8th Cir. 2006) ("Title III prohibits discrimination or the denial of 'full and equal enjoyment' of goods, services, and other benefits provided by 'places of public accommodation' operated by *private entities*.") (emphasis added).

To state a prima facie claim under Title II of the ADA,[4] Adams must show that: (1) he is a "qualified individual with a disability"; (2) he was denied the benefit

---

[4] Claims against persons in their individual capacities are not allowed under Title II of the ADA. *Baribeau v. City of Minneapolis,* 596 F.3d 465, 484 (8th Cir. 2010) ("Title II ... provides redress only from public entities."). Thus, Adams's Title II claim can only be construed as being asserted against Neeld in his official capacity. *Id.* (treating a Title II claim against county employees, sued in their official capacities, as a claim against the county).

of a public entity's "services, programs, or activities," or was otherwise discriminated against; and (3) the denial or discrimination was "based on his disability."[5] *Randolph v. Rogers,* 170 F.3d 850, 858 (8th Cir. 1999). Moreover, any ADA claim for damages requires a showing of "discriminatory intent." *Meagley v. City of Little Rock,* 639 F.3d 384, 389 (8th Cir. 2011). Adams's passing references to the ADA and an alleged "mental disability" fail to show that the one-time mishandling of his mail denied him the benefits of any SCDF program or service or amounted to intentional discrimination, nor does he connect his alleged mental disability in any way to the opening and loss of his mail.[6]

Accordingly, the Court recommends that Adams's ADA claim be dismissed for failure to state a claim upon which relief may be granted.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

---

[5] A "qualified individual with a disability" is one "who, with or without reasonable modifications to rules, policies, or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(s). A "disability" is: (a) an impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. *Id.* § 12102(s).

[6] Notably, in his grievance complaining about the mishandling of his mail, Adams did not mention discrimination based on any disability. *Doc. 2 at 7-8; see O'Guinn v. Lovelock Corr. Center,* 502 F.3d 1056, 1061-62 (9th Cir. 2007) (holding that a prisoner is required to exhaust his administrative remedies before bringing an ADA claim).

8

1. Adams's Complaint and Amended Complaint (*Docs. 2 & 5*) be DISMISSED, WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted.

2. The dismissal of this case be counted as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

3. Adams's Motions for Service (*Docs. 6, 7 & 8*) be DENIED as moot.

4. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 21st day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE